IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

EVELYN OSBORN,

        Plaintiff,

v.                                                          CIV 15-1069 KBM

CAROLYN W. COLVIN,
Acting Commissioner of Social
Security Administration,

        Defendant.

## MEMORANDUM OPINION AND ORDER

THIS MATTER is before the Court on Plaintiff's Motion to Reverse and Remand to Agency for Rehearing with Supportive Memorandum (*Doc. 18*) filed on May 4, 2016. Pursuant to 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73(b), the parties have consented to me serving as the presiding judge and entering final judgment. *See Docs. 5, 10.* Having considered the record, submissions of counsel, and relevant law, the Court finds Plaintiff's motion is well-taken and will be granted.

**I.    Procedural History**

On September 22, 2011, Ms. Evelyn Osborn (Plaintiff) protectively filed applications with the Social Security Administration for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) under Titles II and XVI of the Social Security Act. Administrative Record[1] (AR) at 245-58. Plaintiff alleged a disability onset

---

[1] Documents 15-1 through 15-19 comprise the sealed Administrative Record. *See Doc. 15.* The Court cites the Administrative Record's internal pagination, rather than the CM/ECF document number and page.

date of March 15, 2008. AR at 245, 253. Disability Determination Services determined that Plaintiff was not disabled both initially (AR at 119-36) and on reconsideration (AR at 137-66). Plaintiff requested a hearing with an Administrative Law Judge ("ALJ") on the merits of her SSI application. AR at 184-86.

Both Plaintiff and a vocational expert (VE) testified during the *de novo* hearing. *See* AR at 55-95. ALJ Michelle K. Lindsay issued an unfavorable decision on December 23, 2013. AR at 35-54. Plaintiff submitted a Request for Review of Hearing Decision/Order to the Appeals Council (AR at 34), which the council denied on May 28, 2015 (AR at 7-10). Consequently, the ALJ's decision became the final decision of the Commissioner. *Doyal v. Barnhart*, 331 F.3d 758, 759 (10th Cir. 2003).

## II.  Applicable Law and the ALJ's Findings

A claimant seeking disability benefits must establish that she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *see also* 20 C.F.R. § 404.1505(a). The Commissioner must use a five-step sequential evaluation process to determine eligibility for benefits. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); *see also Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009).

The claimant has the burden at the first four steps of the process to show: (1) she is not engaged in "substantial gainful activity"; (2) she has a "severe medically determinable . . . impairment . . . or a combination of impairments" that has lasted or is expected to last for at least one year; and (3) her impairment(s) meet or equal one of

the listings in Appendix 1, Subpart P of 20 C.F.R. Pt. 404; or (4) pursuant to the assessment of the claimant's residual functional capacity (RFC), she is unable to perform her past relevant work. 20 C.F.R §§ 404.1520(a)(4)(i-iv), 416.920(a)(4)(i-iv); *see also Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005) (citations omitted). "RFC is a multidimensional description of the work-related abilities [a claimant] retain[s] in spite of her medical impairments." 20 C.F.R. § 404, Subpt. P, App. 1 § 12.00(B); *see also* 20 C.F.R. §404.1545(a)(1). If the claimant meets "the burden of establishing a prima facie case of disability[,] . . . the burden of proof shifts to the Commissioner at step five to show that the claimant retains sufficient . . . RFC to perform work in the national economy, given [her] age, education, and work experience." *Grogan*, 399 F.3d at 1261 (citing *Williams v. Bowen*, 844 F.2d 748, 751 & n.2 (10th Cir. 1988) (internal citation omitted)); *see also* 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

At Step One of the process,[2] ALJ Lindsay found that while Plaintiff is currently working part-time as a middle school lunch room monitor, her earnings of approximately $324/month do not reach substantial gainful activity levels. AR at 41. The ALJ found, therefore, that Plaintiff had not engaged in substantial gainful activity since her alleged onset date, March 15, 2008. AR at 41 (citing 20 C.F.R. §§ 404.1571 *et seq.*, 416.971 *et seq.*). At Step Two, the ALJ concluded that Plaintiff "has the following severe impairments: history of herniated discs in cervical spine, status-post fusion; history [of] carpal tunnel syndrome, status-post surgical release bilaterally; diabetes mellitus, and

---

[2] Before engaging in the five-step analysis, ALJ Lindsay noted that Plaintiff filed an application for DIB on April 13, 2010, which was denied initially and on reconsideration. AR at 38. Plaintiff did not pursue the claim further. AR at 38. The ALJ found that, under 20 C.F.R. §§ 404.981 and 404.987-89, there is no basis for reopening the previous decision. AR at 38. Consequently, Plaintiff is unable to claim disability prior to the final decision date of November 22, 2010. AR at 38.

hypertension . . . ." AR at 41 (citing 20 C.F.R. §§ 404.1520(c), 416.920(c)). The ALJ found that Plaintiff's chronic cholecystitis and cholelithiasis without biliary obstruction, fatty liver disease, and obesity did not "have the requisite limiting effects on [Plaintiff's] ability to perform basic work activities" and were non-severe impairments. AR at 41. And while the Plaintiff alleged "limitations due to shoulder and back conditions," the ALJ noted "the record is devoid of any such documented conditions[,] ongoing symptoms[,]" or diagnoses. AR at 43. Thus, the ALJ found that such limitations were not medically determinable. AR at 43.

      The ALJ also noted that while the record evidence "supports [diagnoses] of depression and anxiety," the treatment has been conservative, Plaintiff "has received no ongoing counseling or psychiatric care with no more than basic medication management[,]" and the conditions appear to be "more situational than persistent." AR at 41 (citing AR at 535-66, 645). The ALJ found that neither ongoing treatment records nor consultative examinations demonstrated significant psychological or cognitive abnormalities, and Plaintiff is frequently non-compliant with her medications. AR at 41 (citing AR at 382-91, 523-25, 535-67, 569-81, 586-89, 595-607, 640-49, 657-79). Finally, the ALJ considered the fact that while Plaintiff "originally alleged significant mental problems, at the time of the hearing, she had no mental complaints at all" and "testified that going out and going to work was her 'social-time.'" AR at 42. In the ALJ's opinion, "[t]here seems to be no evidence of any mental impairment-related functional limitations, based on [Plaintiff's] own testimony." AR at 42.

      In making her determination regarding Plaintiff's mental impairments, ALJ Lindsay considered the "paragraph B" criteria – "four broad functional areas set out in

4

the disability regulations for evaluating mental disorders . . . ." AR at 42 (citing 20 C.F.R. Part 404, Subpart P, Appx. 1). The ALJ found that Plaintiff has no limitations in either the first functional area (activities of daily living) or in the second functional area (social functioning). AR at 42. Plaintiff has a mild limitation in the third functional area (concentration, persistence or pace). AR at 42. The ALJ found that Plaintiff has experienced no episodes of decompensation of extended duration, because there is no evidence of hospitalization related to Plaintiff's mental conditions. AR at 42. The ALJ ultimately found that Plaintiff's mental impairments are non-severe, because they cause no more than mild limitations in the first three functional areas, and there were no episodes of decompensation of extended duration in the fourth area. AR at 42 (citing 20 C.F.R. §§ 404.1520a(d)(1), 416.920a(d)(1)).

At Step Three, the ALJ found that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 [C.F.R.] Part 404, Subpart P, Appendix 1." AR at 43 (citing 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, 416.926). At Step Four, the ALJ found that while Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms[,] . . . [Plaintiff's] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible . . . ." AR at 44. The ALJ considered the evidence of record as well as the opinions of Plaintiff's treating physician, the consultative psychologist and physicians, and Plaintiff's sisters and brother. AR at 44-48. Ultimately, the ALJ found that Plaintiff "has the residual functional capacity to perform the full range of light work as defined in 20 [C.F.R. §§] 404.1567(b) and 416.967(b)." AR at 43.

ALJ Lindsay concluded that Plaintiff is able to perform her past relevant work as an educational assistant, which "does not require the performance of work-related activities precluded by" Plaintiff's RFC. AR at 48 (citing 20 C.F.R. §§ 404.1565, 416.965). The ALJ ultimately determined that Plaintiff "has not been under a disability, as defined in the Social Security Act, [since] March 15, 2008 . . . ." AR at 49 (citing 20 C.F.R. §§ 404.1520(f), 416.920(f)).

### III.  Legal Standard

The Court must "review the Commissioner's decision to determine whether the factual findings are supported by substantial evidence in the record and whether the correct legal standards were applied." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (quoting *Hackett v. Barnhart*, 395 F.3d 1168, 1172 (10th Cir. 2005) (internal citation omitted)). A deficiency in either area is grounds for remand. *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1161, 1166 (citation omitted). "Substantial evidence is 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Lax*, 489 F.3d at 1084 (quoting *Hackett*, 395 F.3d at 1172 (internal quotation omitted)). "It requires more than a scintilla, but less than a preponderance." *Id.* (quoting *Zoltanski v. F.A.A.*, 372 F.3d 1195, 1200 (10th Cir. 2004) (internal quotation omitted) (alteration in original)). The Court will "consider whether the ALJ followed the specific rules of law that must be followed in weighing particular types of evidence in disability cases, but [it] will not reweigh the evidence or substitute [its] judgment for the Commissioner's." *Id.* (quoting *Hackett*, 395 F.3d at 1172 (internal quotation marks and quotations omitted)).

"The possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence." *Id.* (quoting *Zoltanski*, 372 F.3d at 1200 (internal quotation omitted)). The Court "may not 'displace the agenc[y's] choice between two fairly conflicting views, even though the court would justifiably have made a different choice had the matter been before it de novo.'" *Id.* (quoting *Zoltanski*, 372 F.3d at 1200 (internal quotation omitted)).

## IV.   Discussion

Plaintiff asserts that the ALJ failed to properly evaluate the opinions and statements of (1) treating physician Ann S. Mercer, M.D.; (2) consultative psychologist Michael R. Pitts, Psy. D.; (3) consultative examining physician Carlos Pastrana, M.D.; (4) consultative nonexamining physician Elizabeth Chiang, M.D.; and (5) Plaintiff's sisters and brother. *Doc. 18* at 4.

### A.   Treating Physician Ann S. Mercer, M.D.

Plaintiff first argues that the ALJ improperly considered the opinion of Plaintiff's treating physician, Dr. Ann Mercer. *Id.* at 8–12. Plaintiff presents two main points of contention: first, Plaintiff contends it was error for the ALJ to find that Dr. Mercer's opinion was unsupported by medical evidence or inconsistent with substantial evidence in the record; and second, Plaintiff alleges that the ALJ did not make her findings sufficiently clear. *Id.*

#### 1.   ALJs must follow a two-step inquiry when evaluating a treating physician's opinion.

An ALJ must consider all medical opinions found in the record. *Padilla v. Colvin*, No. CV 14-495 CG, 2015 WL 10383109, at *4 (D.N.M. June 29, 2015) (citing 20 C.F.R.

§§ 404.1527(b), 416.927(b)). "Medical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about" a plaintiff's impairments. 20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2). An opinion from a treating physician is generally entitled to more weight than either an examining or an agency physician. *Padilla*, 2015 WL 10383109, at *4 (citing *Robinson v. Barnhart*, 366 F.3d 1078, 1084 (10th Cir. 2004) (internal citations omitted)).

"The ALJ should accord opinions of treating physicians controlling weight when those opinions are well-supported by medically acceptable clinical and laboratory diagnostic techniques and not inconsistent with other substantial evidence in the record; this is known as the 'treating physician rule.'" *Id.* (citing 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2); *Langley v. Barnhart*, 373 F.3d 1116, 1119 (10th Cir. 2004) (internal citations omitted)). "A treating physician's opinion is accorded controlling weight because the treating physician has a 'unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations.'" *Id.* (quoting *Doyal*, 331 F.3d at 762 (internal quotation omitted, alteration in original)).

Where the "treating physician's opinion is not supported by medical evidence or consistent with the record," *id.* (citation omitted), it is "still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. [§§] 404.1527 and 416.927.'" *Robinson*, 366 F.3d at 1082 (quoting *Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003) (quoting Soc. Sec. Ruling, SSR 96-2p, Policy Interpretation Ruling Titles II & XVI: Giving Controlling Weight to Treating Source Medical Opinions, 1996 WL 374188, at *4 (July 2, 1996))). The factors include:

> (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.

*Id.* (quoting *Watkins*, 350 F.3d at 1300 (internal quotations omitted)). "When evaluating any medical opinion in the record, the ALJ must give good reasons – reasons that are 'sufficiently specific to make clear to any subsequent reviewers' – for the weight that [she] ultimately assigns to" those opinions. *Padilla*, 2015 WL 10383109, at *4 (quoting *Langley*, 373 F.3d at 1119 (internal quotations omitted)). The ALJ's "determination, like all of [her] findings, must be supported by substantial evidence." *Id.*

### 2. The ALJ's analysis is deficient at both steps of the two-step treating physician inquiry.

ALJ Lindsay concluded that Dr. Mercer's opinion was "not consistent with her own ongoing treatment records or the evidence of record as a whole, which shows little to no objective findings of significant limitations." AR at 47. The ALJ specifically noted that Dr. Mercer's "findings are inconsistent with the rather unremarkable findings during the consultative examination and [Plaintiff's] original admission of being able to lift 10-20 pounds." AR at 47 (citing AR at 324-32, 590-94). The ALJ did not, however, cite to a later self-report from Plaintiff, wherein she states that she can lift 10 pounds or less. AR at 348. Plaintiff repeated this assertion in her examination with the consultative state agency physician, Dr. Pastrana (which the ALJ said was "unremarkable"). AR at 592.

Beyond those two alleged discrepancies, the ALJ failed to enunciate how Dr. Mercer's opinion was inconsistent with the record evidence. "It may be possible to

9

assemble support for this conclusion from parts of the record cited elsewhere in the ALJ's decision, but that is best left for the ALJ [herself] to do in the proceedings on remand." *See Krauser v. Astrue*, 638 F.3d 1324, 1331 (10th Cir. 2011).

The Court finds that the ALJ also failed to sufficiently discuss the six deference factors at the second step of the inquiry. Of the six factors, it is arguable, as discussed above, that the ALJ gave scant attention to the fourth factor – consistency between the opinion and the record as a whole. ALJ Lindsay's cursory evaluation of Dr. Mercer's opinion, however, did not adequately address *any* of the six factors in depth. And while the ALJ cited to Dr. Mercer's treatment records generally in other parts of the opinion (*see* AR at 41, 45), she did not cite with specificity to any records that may or may not have supported the doctor's opinion.[3] It is not enough for the ALJ to generally refer to "the evidence of record as a whole" (AR at 47), as that leaves the Court to guess at what evidence she relied on in making that finding. *See Drapeau v. Massanari*, 255 F.3d 1211, 1214 (10th Cir. 2001) (finding where "an ALJ does not provide any explanation for rejecting medical evidence, [courts] cannot meaningfully review the ALJ's determination") (citing *Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996) ("holding '[i]n the absence of ALJ findings supported by specific weighing of the evidence, [courts] cannot assess whether relevant evidence adequately supports the ALJ's conclusion'"); *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995) ("holding ALJ's

---

[3] On remand, the ALJ should take care to explain whether the following records or treatment notes support or detract from Dr. Mercer's opinion: the referral to psychiatrist Harold E. Alexander, Jr., M.D. (*see* AR at 394-98, 630-39); Plaintiff's report to Dr. Pastrana that she could no longer make jewelry or crafts (AR at 591); and Plaintiff's 2011 self-report that clothing must be loose on her left arm due to nerve damage (AR at 326). These latter two records directly contradict findings the ALJ noted. *See* AR at 46. The ALJ should also consider the records Plaintiff submitted after ALJ Lindsay issued her opinion, which include records related to a hospitalization due to suicidal ideation. AR at 12-31.

listing of factors he considered was inadequate when court was 'left to speculate what specific evidence led the ALJ to [his conclusion]'")).

While the six deference factors might ultimately have supported the ALJ's decision to give the opinion "little weight," this Court "cannot simply presume the ALJ applied the correct legal standards in considering [Dr. Mercer's] opinion" in the absence of express analysis. *See Robinson*, 366 F.3d at 1083 (quoting *Watkins*, 350 F.3d at 1301). ALJ Lindsay's "apparent failure to consider any factor" in depth "makes the ALJ's reasoning insufficient." *See Andersen v. Astrue*, 319 F. App'x 712, 722 (10th Cir. 2009). On remand, the ALJ should more closely examine these factors and, if the ALJ decides to give Dr. Mercer's opinions less than controlling weight, should support that decision with more specific findings and references to the record.[4]

### B. Consultative Psychologist Michael R. Pitts, Psy. D.

Plaintiff alleges that the ALJ failed to properly consider the opinion of consultative psychologist, Michael R. Pitts, Psy. D., who examined Plaintiff on April 2, 2012. *Doc. 18* at 13-14; *see also* AR at 587-89. Under "Diagnostic Impressions," Dr. Pitts diagnosed Dysthymic Disorder and Rule-Out Anxiety Disorder, NOS. AR at 589. He opined that her prognosis is fair. AR at 589. He further stated:

> She is depressed and needs comprehensive mental health treatment but has no medical insurance. She is able to manage funds. Moderate impairment in concentration is reflected by the mental status exam. She

---

[4] Plaintiff also argues that it was improper for the ALJ to consider the fact that Plaintiff used to work for Dr. Mercer as a factor in weighing Dr. Mercer's opinion. *Doc. 18* at 10-11. Plaintiff does not cite to relevant case law, but the Court presumes Plaintiff would support her position with the rule that an ALJ "may reject a treating physician's opinion outright only on the basis of contradictory medical evidence and *not due to his or her own credibility judgments, speculation or lay opinion*." *Langley*, 373 F.3d at 1121 (quoting *McGoffin v. Barnhart*, 288 F.3d 1248, 1252 (10th Cir. 2002) (internal quotations omitted)). On remand, the ALJ must ensure that, if Dr. Mercer's opinion merits less than controlling weight, the ALJ supports that finding with specific, legitimate reasons after considering the six deference factors. *See Frey v. Bowen*, 816 F.2d 508, 513 (10th Cir. 1987) (citation omitted); *Padilla*, 2015 WL 10383109, at *5.

11

> derails at times. There is no evidence of memory impairment. She is cognitively able to follow multistep directions up to a moderate level of complexity but her impaired concentration is likely to interfere with following directions at times. Persistence is impaired by pain. This should be evaluated by a physician. There is no evidence of interpersonal impairment. Ability to adapt to changes on the job would be impaired only by physical or pain symptoms.

AR at 589. The ALJ gave Dr. Pitts' opinion significant weight "as to [Plaintiff's] ability to perform multi-step tasks and directions," but she gave little weight to his opinion that Plaintiff "might have some difficulties concentrating." AR at 47. The ALJ explained that this latter part of Dr. Pitts' opinion "is based on [Plaintiff's] own testimony (or really lack thereof), that she was not having any additional issues other than her neck, arm, and hand pain." AR at 47. "Moreover," the ALJ noted, Plaintiff's "own reported activities support mild limitations in concentration." AR at 47 (citing AR at 324-32).

Plaintiff argues it was improper for the ALJ to "rely solely on portions of the record that support the decision denying benefits, and ignore evidence that is favorable to [Plaintiff's] claim that she is disabled." Doc. 18 at 13 (citing *Hardman v. Barnhart*, 362 F.3d 676, 681 (10th Cir. 2004) (internal citation omitted)). The Commissioner asserts that it was appropriate to give this part of Dr. Pitts' opinion little weight, because it was "based on Plaintiff's own subjective reports, which the ALJ had already deemed unreliable." Doc. 22 at 12 (citing AR at 47, 588-89; *White v. Barnhart*, 287 F.3d 903, 907 (10th Cir. 2001) (finding that the ALJ appropriately discounted a treating physician's opinion where the doctor's "assessment was based on [the plaintiff's] subjective assertions rather than objective medical evidence.")).

The Court disagrees that Dr. Pitts' opinion regarding limitations on concentration was solely based on Plaintiff's own reports of pain. Dr. Pitts noted in the "Mental Health

Exam and Behavioral Observations" section that Plaintiff made "three errors on reverse serial sevens due to impaired concentration." AR at 588-89. Dr. Pitts expressly noted that the "[m]oderate impairment in concentration" that he found was "reflected by the mental status exam" during which he observed that Plaintiff "derails at times."[5] AR at 589. It appears, therefore, that Dr. Pitts' was based not only on Plaintiff's reports of pain but on his observation when conducting the mental status exam. Moreover, one could argue that Dr. Pitts may have attributed limitations in concentration to Plaintiff's anxiety and depression. It is unfortunate that Dr. Pitts did not more clearly lay out the basis of his findings and conclusions. *See* AR at 587-89.

In her reply, Plaintiff quotes Social Security Ruling 96-7p for the proposition that "a finding that an individual's statements are not credible, or not wholly credible, is not in itself sufficient to establish that the individual is not disabled. All of the evidence in the case record, including the individual's statements, must be considered before a conclusion can be made about disability." *Doc. 23* at 2 (quoting Soc. Sec. Ruling, SSR 96-7p, Titles II & XVI: Evaluation of Symptoms in Disability Claims: Assessing the Credibility of an Individual's Statements, 1996 WL 374186, at *5 (July 2, 1996)). The relevant question for the Court, then, is whether the ALJ considered all of the relevant evidence in determining that Plaintiff has only a mild limitation in concentration,

---

[5] Otherwise, nothing from Dr. Pitts' examination appears directly relevant to limitations on Plaintiff's concentration. In fact, Dr. Pitts found that Plaintiff's speech was normal, she was "outgoing with good social skills[,]" she was "oriented times four and answer[ed] four of four information questions correctly[,]" she was "able to calculate reverse serial threes with no errors[,]" her "[i]mmediate recall, delayed recall, and distant recall are all intact[,]" and she was "able to abstract common proverbs and abstract via similarities." AR at 588. Overall, Plaintiff gave Dr. Pitts a detailed background about herself and her health issues, and Dr. Pitts recorded no other observations about impairments in Plaintiff's concentration. AR at 587-89.

persistence or pace, and whether that decision is supported by substantial evidence. AR at 42.

In support of her finding that Plaintiff has a mild limitation in the area of concentration, persistence or pace, the ALJ noted that

> [t]he evidence in the record, including the testimony of [Plaintiff] at the hearing, shows that [she] is, for the most part, able to sustain focus, attention and concentration long enough to permit the timely and appropriate completion of tasks commonly found in work settings. [Plaintiff] drives, handles her own finances, needs no reminders for personal care or medications, can follow both written and verbal instructions well, and reported no significant difficulties in handling stress or changes in routine.

AR at 42 (citing AR at 324-32). The ALJ discounted Dr. Pitts' opinion due to her belief that he based his findings (at least in part) on Plaintiff's self-reports of pain. AR at 47. Yet, Dr. Pitts' reference to Plaintiff's self-report of pain was in relation to her limitations in *persistence*, not in *concentration*. AR at 589 ("Persistence is impaired by pain.").

Dr. Mercer's answer to a question on the Medical Source Statement also contradicts the ALJ's decision. In response to the question: "[i]s it medically reasonable to expect that this patient's ability to maintain attention and concentration on work tasks throughout an 8 hour day is significantly compromised by pain[,] prescribed medication or both?," Dr. Mercer answered "yes." AR at 584 (cited by ALJ, AR at 47). The Court finds it significant, however, that this portion of Dr. Mercer's opinion was directly contrary to other evidence of record. Most notably, Plaintiff's own responses to the Function Report in "Section C – Information About Abilities," where Plaintiff was directed to "[c]heck any of the following items your illness, injuries, or conditions affect," Plaintiff did *not* mark the box for concentration either time she completed this form. AR at 330

(signed Nov. 12, 2011; cited by ALJ, AR at 44), 348 (signed Mar. 7, 2012). Plaintiff does not offer, nor can the Court find, any evidence that Plaintiff complained about problems concentrating to any of her physicians. There are no records wherein Dr. Mercer expressed concerns about Plaintiff having difficulty maintaining attention and/or concentration other than her referenced response on the Medical Source Statement. *See, e.g.*, AR at 382-91, 459-97, 535-66, 595-607, 640-49, 657-79 (cited by the ALJ throughout opinion). Nor did Dr. Harold E. Alexander, Jr., M.D., a psychiatrist who saw Plaintiff on three different occasions, ever mention impaired concentration as a concern. AR at 394-98.

The issue is a close one, and on remand, the ALJ should clarify her findings on Plaintiff's limitations on concentration, persistence and pace. The ALJ may wish to develop the record with respect to this issue.

### C. Consultative Examining Physician Carlos Pastrana, M.D.

Plaintiff asserts that the ALJ failed to properly evaluate the opinion of consultative examining physician Carlos Pastrana, M.D. *Doc. 18* at 14-15. Specifically, Plaintiff contends that while the ALJ discussed Dr. Pastrana's opinion, she failed to state the weight she gave to the opinion. *Id.* at 15 (citing 20 C.F.R. §§ 404.1527, 416.927; Soc. Sec. Ruling, SSR 96-6p, Policy Interpretation Ruling Titles II & XVI: Consideration of Administrative Findings of Fact by State Agency Medical and Psychological Consultants and Other Program Physicians and Psychologists at the Administrative Law Judge and Appeals Council Levels of Administrative Review; Medical Equivalence, 1996 WL 374180 (July 2, 1996)). The Commissioner responds that the ALJ "appropriately considered Dr. Pastrana's findings that Plaintiff had only a slight decrease in range of

motion of the low back, full range of motion of the neck, and otherwise normal physical findings." *Doc. 22* at 13 (citing AR at 45, 592; 20 C.F.R. § 404.1527(c)(4)).

Plaintiff is correct that the ALJ summarized Dr. Pastrana's findings from his examination, but failed to specify what weight she attributed to those findings. The parties did not discuss whether this was harmless error. *See Mays v. Colvin*, 739 F.3d 569, 578–79 (10th Cir. 2014) (citation omitted) ("[A]n ALJ's failure to weigh a medical opinion involves harmless error if there is no inconsistency between the opinion and the ALJ's assessment of residual functional capacity."). On remand, the ALJ should state what weight is given to Dr. Pastrana's opinion per the regulations. *See* 20 C.F.R. §§ 404.1527, 416.927.

### D. Consultative Non-examining State Agency Physician Elizabeth Chiang, M.D.

Plaintiff alleges that the ALJ failed to properly consider the consultative non-examining state agency physician's opinion of Dr. Elizabeth Chiang, M.D. *Doc. 18* at 8. Plaintiff notes that at the reconsideration level, Dr. Chiang, who "considered the opinion of Dr. Pitts" (*id.* at 14), "found [Plaintiff's] anxiety disorder to be severe, resulting in a moderate limitation in concentration, persistence or pace, and opined that [Plaintiff] would be limited to work involving detailed but not complex instructions." *Id.* at 8 (citing AR at 144-46). Plaintiff asserts that "[t]he ALJ disregarded both Dr. Pitts['] and Dr. Chiang's findings because she found Dr. Pitts' opinion to be based on [Plaintiff's] testimony." *Id.* at 14. Plaintiff contends that the Tenth Circuit has held that this reasoning is "insufficient . . . to discredit the consultative physicians' opinions." *Id.* (citing *Thomas v. Barnhart*, 147 F. App'x 755, 759-60) (10th Cir. 2005)).

16

The Court has already found that the ALJ may wish to develop the record with respect to Dr. Pitts' opinion. A reevaluation of Dr. Pitts' opinion may also change the ALJ's evaluation of Dr. Chiang's opinion. The ALJ should revisit this issue on remand.

### E. Third-Party Statements of Plaintiff's Sisters and Brother

Plaintiff argues that the ALJ did not properly consider the opinions from her siblings. *Doc. 18* at 15–16. Specifically, Plaintiff argues that "[t]he reasons the ALJ gave to reject the third party statements goes [sic] against the policy of having third party statements evaluated." *Id.* at 16. The Commissioner did not respond to this argument. *See Doc. 22*.

ALJs are required to consider all relevant evidence when making a determination of disability. *See Holcomb v. Astrue*, 389 F. App'x 757, 760 (10th Cir. 2010) (citing Soc. Sec. Ruling, SSR 06-03p, Titles II & XVI: Considering Opinions and Other Evidence from Sources Who Are Not "Acceptable Medical Sources" in Disability Claims; Considering Decisions on Disability by Other Governmental and Nongovernmental Agencies, 2006 WL 2329939 (Aug. 9, 2006)). The regulations contemplate the consideration of evidence from all sources, both medical and non-medical, including "[s]pouses, parents and other caregivers, **siblings**, other relatives, friends, neighbors, clergy, and employers." SSR 06-03p, at *2 (emphasis added). "Information from these 'other sources' cannot establish the existence of a medically determinable impairment." *Id.* It may, however, "provide insight into the severity of the impairment(s) and how it affects the individual's ability to function." *Id.*

In evaluating the opinion evidence from Plaintiff's siblings, ALJ Lindsay stated that she considered the opinions from Plaintiff's "two sisters and brother" to help her

17

"understand some of the severity of [Plaintiff's] various symptoms over time." AR at 47-48 (citing AR at 360-63). She gave the opinions "little weight with respect to assessing [Plaintiff's] current functional limitations because of their high degree of subjectivity, and their lack of medically acceptable standards." AR at 48.

"In the Tenth Circuit, an ALJ is *not* required to make specific, written findings regarding each lay witness's opinion when the written decision reflects that the ALJ considered the testimony." *Croley v. Colvin*, Civ. No. 12-1101-JWL, 2013 WL 615564, at *5 (D. Kan. Feb. 19, 2013) (citing *Blea v. Barnhart*, 466 F.3d 903, 914-15 (10th Cir. 2006) (internal citations omitted); *Adams v. Chater*, 93 F.3d 712, 715 (10th Cir. 1996)). Instead, "[t]he decision must reflect that the ALJ included the opinion in [her] consideration of disability, but [she] need not specify the weight accorded to that opinion. Nonetheless [she] *may* do so in explaining the rationale for [her] decision." *Id.* at *6.

As is required by the rules, it is clear that the ALJ considered the non-medical opinions in her determination of the severity of Plaintiff's "current functional limitations." AR at 48. She also explained that she gave the opinions little weight, which is not required under Tenth Circuit precedent. *Croley*, 2013 WL 615564, at *6. Plaintiff is correct that the ALJ did not need to measure the non-medical "other source" opinions against any "medically acceptable standards." *See* SSR 06-03p. Plaintiff did not, however, cite any authority for the proposition that the ALJ's statement about the opinion evidence requires reversal and remand.

The siblings' statements reiterate Plaintiff's own testimony. All three siblings mention the opinion that stress exacerbates Plaintiff's condition and echo Plaintiff's own

complaints of being unable to work consistently due to pain. AR at 360-63; *see also* AR at 63-90. Because Plaintiff has not presented any relevant case law to support her position that the ALJ's opinion requires reversal on this issue, nor has the Court found any such authority, Plaintiff's motion is denied with respect to this issue.

### V.     Conclusion

The Court finds that the ALJ failed to apply the correct legal standards in assessing Dr. Mercer's and Dr. Pastrana's opinions. The Court will grant Plaintiff's motion and remand to allow the ALJ to conduct the proper two-step analysis with respect to Dr. Mercer's opinion, and to specify what weight was given to Dr. Pastrana's opinion. The ALJ should also revisit the evaluation of Dr. Pitts' opinion and consider developing the record on the issue of Plaintiff's limitations in the area of concentration, persistence and pace.

Wherefore**,**

**IT IS ORDERED** that Plaintiff's Motion to Reverse and Remand for a Rehearing with Supportive Memorandum *(Doc. 18)* is **GRANTED**, and a final order pursuant to Rule 58 of the Federal Rules of Civil Procedure will be entered.

_____
UNITED STATES CHIEF MAGISTRATE JUDGE
Presiding by Consent